THE HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

J.D. EQUIPMENT, LLC, a Washington
limited liability company,

                   Plaintiffs,

     v.

ACME LIFT COMPANY, LLC, an
Arizona limited liability company; and
ALLIED CRANE & MACHINERY, LLC,
a Delaware limited liability company,

                 Defendants.

CASE No. 12-cv-01720-RAJ

ORDER

## I. INTRODUCTION

This matter comes before the court on Defendants Acme Lift Company, LLC

("Acme") and Allied Crane & Machinery, LLC's ("Allied") motion to dismiss for lack of

personal jurisdiction. Dkt. # 11.  Plaintiff J.D. Equipment, LLC's ("J.D. Equipment")

opposes the motion by arguing that this court has specific personal jurisdiction over

Defendants or, in the alternative, *in rem* jurisdiction over Defendants' property. Dkt. #

14. Having considered the parties' briefing and the record herein, the court DENIES the motion as to Allied and GRANTS the motion as to Acme.[1]

## II. BACKGROUND

This action arises out of a breach of contract dispute involving two pieces of construction equipment, a forklift and a truck-mounted crane, also known as a "boom truck." Dkt. # 1-1 (Compl.). J.D. Equipment is a Washington limited liability company and an excavation contractor that occasionally sells and leases construction equipment. Dkt. # 1-1 ¶¶ 1, 5. At all times relevant to this litigation, Jim Dow owned a controlling interest in J.D. Equipment. Dkt. # 16 (Dow Decl.) ¶ 1. Allied is a Delaware limited liability company, and Acme is an Arizona limited liability company. Dkt. # 1-1 ¶ 2. Allied and Acme are construction equipment dealers that sell and lease equipment throughout the United States and Canada (Dkt. # 1-1 ¶ 5; Dkt. # 16 (Dow Decl.) ¶ 3), and are headquartered in Mesa, Arizona (Dkt. # 12 (Weld Decl.) ¶ 4). Allied and Acme are affiliated entities sharing common ownership and principal place of business. Dkt. # 1-1 ¶ 5. Woody Weld owns a majority interest in both Allied and Acme. Dkt. # 16 ¶ 3; *see also* Dkt. # 12 (Weld Decl.) ¶ 2.

In early 2009, Mr. Dow and Mr. Weld, on behalf of their respective companies, began negotiating a deal for "the sale and/or lease" of certain construction equipment. Dkt. # 1-1 ¶ 6; Dkt. # 16 (Dow Decl.) ¶ 5. These negotiations coincided with "a separate, private" real estate transaction involving Mr. Dow facilitating and Mr. Weld purchasing a condominium in Mexico.[2] Dkt. # 16 (Dow Decl.) ¶ 4; Dkt. # 1-1 ¶ 6. In February 2009, Mr. Weld traveled to Seattle, Washington, to meet with Mr. Dow to negotiate the terms

---

[1] This matter may be decided on the papers submitted. Accordingly, Defendants' request for oral argument is DENIED.

[2] J.D. Equipment contends "[t]hat [this real estate] transaction provided incentive to negotiate the [rental] contract[s] at issue, but has no bearing on the present question of jurisdiction."

1  of the construction equipment deal.[3] Dkt. # 16 (Dow Decl.) ¶ 6.  While in Seattle, Mr.

2  Dow and Mr. Weld reached an understanding that would allow J.D. Equipment to

3  "purchase and use construction equipment from Acme/Allied," and that the construction

4  equipment would be identified by Mr. Dow "at a later point in time." *Id.*

5       Through June 2010, the parties communicated by phone and electronic mail. Dkt.

6  # 1-1 ¶ 6.  The terms of the deal called for J.D. Equipment's lease of a particular model of

7  forklift from Acme and boom truck from Allied "for 24 months, with monthly rentals,

8  certification, and maintenance to be covered by Allied/Acme." Dkt. # 16 (Dow Decl.) ¶

9  10; Dkt. # 1-1 ¶¶ 6-7; Dkt. # 15-1 at 3-5 (Ex. A to Eckman Decl., Rental Contracts).[4]

10  J.D. Equipment would also have an option to purchase the forklift and boom truck at the

11  conclusion of the lease period. *Id.*  The rental contracts were faxed from "Acme

12  Headquarters" and designated Seattle, Washington, as the "job location" for the leased

13  equipment. *Id.*

14       At J.D. Equipment's request, Acme shipped the forklift to the Port of Seattle en-

15  route to Hawaii, which is where the forklift is currently located. Dkt. # 15 (Eckman

16  Decl.) ¶ 5; Dkt. # 15-1 at 7 (Ex. B to Eckman Decl.); Dkt. # 1-1 ¶ 9; Dkt. # 19 (Weld

17  Supp. Decl.) ¶ 5.  In September 2010, J.D. Equipment brought the boom truck to Seattle,

18  Washington.[5] Dkt. # 1-1 ¶ 8.  The boom truck is currently in J.D. Equipment's possession

19  in Washington. *Id.*  From September 2010 to August 2012, Allied inspected, serviced,

20  and repaired the boom truck by contracting with Washington companies. *See* Dkt. # 15

21

22  [3] Defendants dispute this fact. On Mr. Weld's account, he was in Seattle on unrelated business
    and met Mr. Dow for lunch, but the conversation between the parties "did not involve any
23  discussions about any construction equipment or anything other than the Mexican Condominium
    Purchase." Dkt. # 19 (Weld Supp. Decl.) ¶ 3.
24  [4] The rental contracts show that Acme and Allied share the same physical address, contact
    information, and accounting.  Both Allied's and Acme's rental contracts state that "Damage
25  Waiver … will be charged unless customer has *Acme Lift Co. authorized charge account*." *Id.*
26  (emphasis added).
    [5] According to Mr. Weld, the boom truck was released to and picked up by J.D. Equipment in
27  Fremont, California. Dkt. # 12 (Weld Decl.) ¶ 23.

1 (Eckman Decl.) ¶¶ 7-14, Exs. C-J.  Allied also obtained safety certification from the

2 Washington State Department of Labor and Industries ("DLI"). Dkt. # 15-1 at 23-25 (Ex.

3 H to Eckman Decl.).  On certification matters, Allied and the DLI communicated with

4 each other directly, and the safety certificate was issued to Allied. Dkt. # 15-1 at 24 (Ex.

5 H to Eckman Decl.).  Invoices for the boom truck's inspection, service, and repair were

6 billed to and paid by Allied. Dkt. # 15 ¶¶ 11, 13; Dkt. # 15-1 at 27-28 (Ex. I to Eckman

7 Decl.).

8        At the conclusion of the lease period, Defendants refused to allow J.D. Equipment

9 to exercise its option to purchase the forklift and boom truck, and demanded the return of

10 the equipment. Dkt. # 16 (Dow Decl.) ¶¶ 11, 12.  On multiple occasions, Mr. Dow

11 contacted Mr. Weld in an attempt to persuade him to honor their agreed-upon purchase

12 option, but those efforts failed. Dkt. # 1-1 ¶ 9; Dkt. # 16 (Dow Decl.) ¶ 12.

13                                   **III. ANALYSIS**

14        Plaintiff has the burden of establishing personal jurisdiction. *Ziegler v. Indian*

15 *River County*, 64 F.3d 470, 473 (9th Cir. 1995).  If the jurisdictional challenge is decided

16 solely on affidavits and discovery materials, Plaintiff need only establish a *prima facie*

17 case of jurisdiction. *Rano v. Sipa Press, Inc.*, 987 F.2d 580, 587 n.3 (9th Cir. 1993).

18 Namely, Plaintiff need only demonstrate facts that, if true, would support jurisdiction

19 over Defendants. *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995).  Uncontroverted

20 allegations in the complaint must be taken as true, and conflicts between the facts

21 contained in the parties' affidavits must be resolved in Plaintiff's favor for purposes of

22 deciding whether a *prima facie* case for personal jurisdiction exists. *AT & T*, 94 F.3d at

23 588.  Where, as here, there is no applicable federal statute governing personal

24 jurisdiction, the law of the state in which the district court sits applies. *Glencore Grain*

25 *Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1123 (9th Cir. 2002).

26 Washington's long-arm statute, RCW 4.28.185, "extends jurisdiction to the limit of

27 federal due process." *Shute v. Carnival Cruise Lines*, 113 Wn. 2d 763, 771, 783 P.2d 78

1    (1989).  The due process clause grants the court jurisdiction over defendants who have

2    "certain minimum contacts . . . such that maintenance of the suit does not offend

3    'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*,

4    326 U.S. 310, 316 (1945).

5          If Defendants' contacts with the forum state are "substantial" or "continuous and

6    systematic," then the court may exercise general personal jurisdiction over Defendants

7    without regard to whether the action arises from their activities in the forum state.[6]

8    *Perkins v. Benguet*, 342 U.S. 437, 445-46 (1952).  If Defendants' activities within the

9    forum state are less substantial, then the court may exercise specific personal jurisdiction

10   where the action arises out of or is related to Defendants' particular activities within the

11   forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8

12   (1984). For specific personal jurisdiction, the court applies a three-part test: (1)

13   Defendants must purposefully direct their activities or consummate some transaction with

14   the forum or resident thereof, or perform some act by which they purposefully avail

15   themselves of the privileges of conducting activities in the forum, thereby invoking the

16   benefits and protections of its laws; (2) the claim must be one which arises out of or

17   relates to Defendants' forum-related activities; and (3) the exercise of jurisdiction must

18   comport with fair play and substantial justice, i.e. it must be reasonable. *Schwarzenegger*

19   *v. Fred Martin Motor Co*., 374 F.3d 797, 802 (9th Cir. 2002).  Plaintiff bears the burden

20   on the first two parts of the test. *Mavrix Photo, Inc. v. Brand Techs., Inc*., 647 F.3d 1218,

21   1228 (9th Cir. 2011).  If Plaintiff meets its burden, the burden shifts to Defendants to

22

23   _____

     [6] J.D. Equipment does not argue that general jurisdiction exists, but rather requests additional
24   time for discovery "so that *further* facts pertaining to general jurisdiction *may be* uncovered."
     Dkt. # 14 at 8 n.28 (emphasis added).  Plaintiff's request for jurisdictional discovery is DENIED
25   where it appears to be based on speculation. *See Butcher's Union Local No. 498 v. SDC Inv.,
     Inc*., 788 F.2d 535, 540 (9th Cir. 1986) (holding that district court did not abuse its discretion by
26   refusing jurisdictional discovery where the plaintiffs "state only that they 'believe' discovery will
     enable them to demonstrate sufficient California business contacts to establish the court's
27   personal jurisdiction").

1    make a "compelling case" that the exercise of jurisdiction is unreasonable. *Id*.  Each

2    Defendant's contacts with the forum state must be analyzed separately. *Rush v. Savchuk*,

3    444 U.S. 320, 332 (1980) ("The requirements of *International Shoe* … must be met as to

4    each defendant over whom a state court exercises jurisdiction.").

**A.    Personal Jurisdiction Over Allied**

      1.    Purposeful Availment or Direction

7          Although courts often use the phrase "purposeful availment" to include both

8    purposeful availment and purposeful direction, they are two distinct concepts.

9    *Schwarzenegger*, 374 F.3d at 802.  A purposeful direction analysis is most often used in

10   "suits sounding in tort," while a purposeful availment analysis is "most often used in suits

11   sounding in contract." *Id*.  Because this is a suit for breach of contract, a purposeful

12   availment analysis is appropriate.  Under this analysis, the court examines "evidence of

13   the defendant's actions in the forum, such as executing or performing a contract there."

14   *Id*.  The court looks to "prior negotiations and contemplated future consequences, along

15   with the terms of the contract and the parties' actual course of dealing" to determine if

16   Defendant's contacts with the state are "substantial" and not merely "random, fortuitous,

17   or attenuated." *Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir. 1990).  Jurisdiction is

18   proper if Defendant's "business activities reach out beyond one state and create

19   continuing relationships and obligations" between Defendant and residents of the forum.

20   *Travelers Health Ass'n v. Commonwealth of Va*., 339 U.S. 643, 647 (1950).  By taking

21   such actions, Defendant "purposefully avails itself of the privilege of conducting

22   activities within the forum State, thus invoking the benefits and protections of its laws."

23   *Sher*, 911 F.2d at 1362.  In return for the "benefits and protections" of the forum state,

24   Defendant, however, must "submit to the burdens of litigation in that forum." *Id*.

25         Here, J.D. Equipment asserts that Allied purposefully availed itself of the privilege

26   of doing business in Washington.  The court agrees.  It appears that Mr. Weld, on behalf

27   of Allied, personally traveled to Washington and, while there, negotiated a contract with

1    Plaintiff for the lease and purchase of the boom truck.  It also appears that Allied

2    contemplated future consequences of this contractual relationship, and that it would have

3    continuing involvement with Washington.  While Allied did not ship the boom truck to

4    Washington, Allied was aware that the boom truck was going to be used in this state.

5    This evidentiary inference is supported by the fact that Allied provided the rental

6    contract, which called for performance in Seattle, Washington, and knowingly took on

7    the burden of ensuring that the boom truck could be legally operated in the state.

8    Throughout the 24-month lease period, Allied contracted with and directly paid

9    Washington businesses to inspect, service, and repair the boom truck.  To fulfill its

10   continuing commitments under the rental contract, Allied directly communicated with the

11   state's governmental entity in order to obtain necessary safety certification, and complied

12   with the Washington State Safety Standards for Construction Operations mandated by the

13   Washington Administrative Code ("WAC").  *See* Dkt. # 15 ¶ 8; Dkt. # 15-1 at 12, 15, 18

14   and 30 (Exs. D, E, F, and J to Eckman Decl.).  Allied's compliance with the WAC

15   allowed the boom truck to be legally operated in Washington, and, thus, "shielded

16   [Allied's activities] by the benefits and protections" of the forum state. *See Burger King*

17   *v. Rudzewicz*, 471 U.S. 462, 475-76 (1985).  These benefits and protections of

18   Washington laws obtained by Allied make it reasonable to require Allied to submit to the

19   burdens of litigation as well.[7] *Burger King*, 471 U.S. at 476.  Accordingly, the court finds

20   that Allied purposefully availed itself of the benefit and privilege of doing business in

21   Washington.

22            2.  "Arising out of" Requirement

23            The arising out of requirement is met if "but for" the contacts between the

24   defendant and the forum state, the cause of action would not have arisen. *Doe v. Am.*

_____

25   [7] Allied's attempt to analogize *Colonial Leasing Co. v. Pugh Bros. Garage*, 735 F.2d 380, 382
26   (9th Cir. 1984) is unavailing.  Unlike Allied's cognizant transactions at issue, in *Colonial
     Leasing*, the lessee defendants believed that they were contracting with a New York corporation,
27   the local agent for the lessor, an Oregon corporation. *See Colonial Leasing*, 735 F.2d at 381.

1    *Nat'l Red Cross*, 112 F.3d 1048, 1051 (9th Cir. 1997).  Here, J.D. Equipment and Allied

2    negotiated the lease agreement in Washington, and an option to purchase the construction

3    equipment at the end of the lease was part of the agreement. Dkt. 1-1 ¶¶ 7, 9.  But for

4    Allied's refusal to sell the equipment, Plaintiff would not have brought this suit against

5    Allied.  Thus, the court finds that the second prong of the test is met.

6        3.   Reasonableness of Exercise of Jurisdiction

7        In determining whether it is reasonable to exercise specific jurisdiction, courts in

8    the Ninth Circuit consider seven factors:  (1) the extent of a defendant's purposeful

9    interjection into the forum, (2) the burden on the defendant in defending in the forum, (3)

10   the extent of conflict with the sovereignty of the defendant's state, (4) the forum state's

11   interest in adjudicating the dispute, (5) the most efficient judicial resolution of the

12   controversy, (6) the importance of the forum to the plaintiff's interest in convenient and

13   effective relief, and (7) the existence of an alternative forum.  *Panavision Int'l, L.P. v.*

14   *Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998).

15       Regarding the first factor, as detailed previously, Allied's interjection into

16   Washington was knowing and intentional and created continuing obligations to Plaintiff

17   and Washington residents.  Allied provided the rental contract for the "job location" in

18   Seattle, Washington, and the contract was negotiated and performed there.  Allied also

19   transacted with Washington businesses and took affirmative actions to ensure the lawful

20   operation of the boom truck in the state.  The court concludes that this factor weighs in

21   favor of exercising personal jurisdiction.

22       Regarding the second factor, no doubt it would be more burdensome for Allied to

23   litigate in Washington rather than in Arizona, where it is headquartered.  However,

24   "[w]ith the advances in transportation and telecommunications and the increasing

25   interstate practice of law, any burden is substantially less than in days past." *CE Distrib.,*

26   *LLC v. New Sensor Corp.*, 380 F.3d 1107, 1112 (9th Cir. 2004).  Nonetheless, this factor

27   weighs in favor of Allied.

1    Allied has not addressed the third factor.  This factor is neutral because there does
2    not appear to be a conflict between Washington and Arizona law that would impact the
3    court's decision.

4    Regarding the fourth factor, Washington has an interest in protecting its citizens
5    from injuries inflicted by out-of-state actors who have negotiated or executed contracts
6    within the state.  *See* RCW 4.28.185(1)(a).  This factor weighs in favor of exercising
7    personal jurisdiction.

8    The fifth factor focuses on the location of the evidence and witnesses.  *Panavision*
9    *Int'l*, 141 F.3d at 1323.  The only claim before the court is a breach of contract claim
10   based on Defendants' repudiation of the purchase option.  Here, the evidence and
11   witnesses appear to be split between Arizona and Washington.  Nevertheless, this factor
12   "is no longer weighed heavily given the modern advances in communication and
13   transportation."  *Panavision Int'l*, 141 F.3d at 1323-24.

14   Regarding the sixth factor, Plaintiff is a resident of Washington, and litigating in
15   one's home state is more convenient.  However, this factor is not of paramount
16   importance.  *CE Distrib.*, 380 F.3d at 1112.

17   Regarding the seventh factor, it appears that Arizona's courts would provide an
18   alternative forum.  Plaintiff bears the burden of proving the unavailability of an
19   alternative forum.  *Core-Vent Corp. v. Nobel Industries AB*, 11 F.3d 1482, 1490 (9th Cir.
20   1993).  Here, J.D. Equipment has not shown that it would be precluded from suing Allied
21   in Arizona.  This factor weighs against the exercise of personal jurisdiction.

22   Balancing the factors, the court finds that Allied has failed to present a
23   "compelling case" that the exercise of jurisdiction would be unreasonable.  Accordingly,
24   because the factors support the reasonableness of jurisdiction, and because Plaintiff has
25
26
27

1  met its burden to satisfy the first two prongs of the test, the exercise of specific personal

2  jurisdiction over Allied is appropriate.[8]

3  **B.    Personal Jurisdiction Over Acme**

4          J.D. Equipment asserts that jurisdiction over Acme is proper because "Acme

5  shipped the Forklift directly to Seattle," as specified in the rental contract. Dkt. # 14 at 4.

6  Acme argues that simply shipping the forklift through the state of Washington to Hawaii

7  "does not create the type of necessary personal availment to establish specific personal

8  jurisdiction." Dkt. # 18 at 7.  The court agrees.  The fact that Washington was used as a

9  pass-through conduit does not warrant a finding of personal jurisdiction over Acme.  On

10 Plaintiff's version of the facts, the forklift was shipped to the Port of Seattle at J.D.

11 Equipment's request, and arrangements were made to have the forklift delivered to

12 Hawaii. *See* Dkt. #15-1 at 7 (Ex. B to Eckman Decl.).  It appears that, once the forklift

13 was shipped, Acme has neither engaged in any additional conduct directed at Washington

14 nor created continuing obligations between itself and residents of the forum state.  As the

15 Supreme Court has explained, a contract alone does not automatically establish minimum

16 contacts in the plaintiff's home forum. *See Burger King Corp.*, 471 U.S. at 478.  On the

17 particular facts presented here, the court cannot exercise personal jurisdiction over Acme.

18 Because J.D. Equipment fails at the first prong of the test for specific personal

19 jurisdiction, the court's jurisdictional analysis will end. *See Pebble Beach Co. v. Caddy*,

20 453 F.3d 1151, 1155 (9th Cir. 2006) ("[Plaintiff's] arguments fail under the first prong.

21 Accordingly, we need not address [the remaining two prongs].").[9]

22

23

---

24 [8] Therefore, the question of *in rem* jurisdiction over Allied's boom truck is moot.

   [9] Plaintiff also has not shown that Allied's contacts can be imputed to Acme for jurisdictional

25 purposes. *See* Dkt. # 16 (Dow Decl.) ¶ 3; Dkt. # 14 at 2.  Although corporate relationships may

   lead to jurisdiction, personal jurisdiction cannot be premised on corporate affiliation or stock

26 ownership alone. *See Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd.*, 328 F.3d

   1122, 1134-35 (9th Cir. 2003).  Here, Plaintiff has made no credible argument that an "alter ego"

27 or "agency" relationship between Allied and Acme exists or would be discoverable. *Id.* at 1135.

1    For all the foregoing reasons, Defendants' motion to dismiss for lack of personal
2    jurisdiction is DENIED with respect to Allied and GRANTED with respect to Acme. In
3    light of the court's ruling, if Allied or Plaintiff believe that they are entitled to attorney's
4    fees, they may file respective motions no later than 3 weeks from the date of this order
5    pursuant to Local Civil Rule 7.  The parties shall meet and confer in an attempt to agree
6    on the amount of reasonable attorney's fees.  The court will impose additional fees on
7    any party who takes an unreasonable position regarding the attorney's fees motion.
8    Dated this 10th day of April, 2013.
9
10
11                                  The Honorable Richard A. Jones
12                                  United States District Judge
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27